# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

RONALD JOHNSON,

    Plaintiff,

v.    Civ. No. 09-007-LPS

WARDEN PHIL MORGAN,

    Defendant.

Ronald G. Johnson, Wilmington, Delaware, Pro Se Plaintiff.

Kenisha L. Ringgold, Esquire, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for Defendant.

**MEMORANDUM OPINION**

March 30, 2012
Wilmington, Delaware

[signature: Leo P. S.]
**STARK, U.S. District Judge:**

I. **INTRODUCTION**

Plaintiff, Ronald Johnson ("Johnson"), a former inmate at the Howard R. Young Correctional Institution ("HRYCI") in Wilmington, Delaware, filed this lawsuit pursuant to 42 U.S.C. § 1983 and § 1986 alleging violations of his civil rights. Johnson appears pro se and has been allowed to proceed in forma pauperis. (D.I. 4) Pending before the Court is Defendant Warden Phil Morgan's ("Warden Morgan") Motion for Summary Judgment. (D.I. 55) The Court has jurisdiction pursuant to 28 U.S.C. § 1331. For the reasons that follow, the Court will grant Warden Morgan's Motion for Summary Judgment.

II. **BACKGROUND**

Johnson filed his Complaint on January 2, 2009. He alleges that he was illegally held at the HRYCI on a false charge of violation of probation ("VOP") and that he wrote to Warden Morgan on numerous occasions to correct the matter, to no avail. (D.I. 2)

On December 16, 2008, Johnson was arrested for offensive touching and two counts of third degree assault following a complaint of domestic violence that occurred on December 9, 2008. (D.I. 56 at A1-3) Johnson was committed the HRYCI pursuant to two Justice of the Peace Orders. (*Id.* at A5-6) One Order was based upon an active capias for fighting/disorderly conduct, Case No. L0-0611014094, and the other Order was based upon the December 9, 2009 incident that resulted in the new counts of assault and offensive touching, Case Nos. L0-0812005967-001, 002, and 003. (*Id.*) Bail was set at two hundred thirty dollars, cash only, on the outstanding capias and at five hundred fifty dollars ($550) secured bail on the assault ($250 for each count) and offensive touching ($50) charges. (*Id.* at A5-6) A hearing for the

1

outstanding capias was scheduled for December 17, 2008, and a hearing was scheduled for December 18, 2008 on the assault and offensive touching charges. (*Id.* at A5-6)

A disposition on the capias, Case No. L0-0611014094, dated December 17, 2008, states "new agreement" "to be released." (*Id.* at A13) The Court of Common Pleas sent to the Central Offender Records an updated disposition on the assault and offensive touching charges, Case Nos. L0-0812005967-001, 002, and 003, dated December 18, 2008, that indicated Johnson was being held, bail was increased to a total of two thousand dollars ($2000) for all of the new charges (up from the original $550), and trial was scheduled to begin on January 28, 2009.[1] (*Id.* at A14) Johnson's offender status sheet, dated December 18, 2008, indicated, in error, a VOP charge, Case No. DACS00002, 0812008624. (D.I. 51 at ex. A)

During his deposition, Johnson testified that he "was getting arrested" for assaulting his girlfriend, designated his sister and niece as his power of attorneys over his account, and readied for his arrest by giving his niece one thousand dollars for use towards bail. (*Id.* at A7, A12) When Johnson's niece and sister attempted to pay Johnson's bail, they were informed that Johnson had an outstanding VOP charge with a one thousand dollar cash bail. (*Id.* at A17) Because Johnson's offender status sheet of December 18, 2008 stated that, in addition to the assault and offensive touching charges, he was being detained on the VOP charge with bail set at one thousand dollars, the bondsman advised Johnson's relatives that they were required to pay three hundred thirty-three dollars for the VOP charge in addition to the two thousand dollars

---

[1] Johnson was found guilty of assault in the third degree. (*Id.* at A16)

2

secured bond for the assault and offensive touching charges.[2] (D.I. 56 at A17) At no time did Johnson's niece speak to any prison officials. (D.I. 59 at ex. A) Johnson was informed by the bondsman that bail money paid for the VOP charge was non-refundable. (*Id.*) According to Johnson, his family could not afford to pay the non-refundable bail for the VOP charge, and he told his family to "just hold off" and he would try to correct the error at the HRYCI. (D.I. 56 at A12)

On a daily basis, and until his release, Johnson spoke to prison employees and wrote to the Records Department, Warden Morgan, the Business Office, and Dover's Main Records Department regarding the VOP charge. (*Id.* at A16) Johnson also wrote to the New Castle County Family Court, the Kent County Family Court, the Public Defender, and the Public Defender's Office. (*Id.* at A17) Johnson was repeatedly told by staff that everyone was aware of his complaint, they had contacted the courts, and his complaint had been sent to the Dover Records Department, but that he would not be released until the Records Department cleared his record of the VOP charge. (*Id.* at A18)

Johnson submitted a grievance on December 19, 2008, complaining that his offender status sheet, in error, included a VOP charge. (*Id.* at A20) The grievance stated that Johnson had never been on probation, had never been arrested for a VOP, and had never been arraigned on a VOP charge. (*Id.*) The matter was investigated and a report issued on December 24, 2008. (*Id.*) On December 31, 2008, the Clerk of the Justice of the Peace Court issued an order directed to the Delaware Department of Correction that Johnson had met his obligation by posting bond and/or

---

[2]According to Johnson, the VOP charge actually belonged to an individual named James J. Cameron. (D.I. 51 at ex. A; D.I. 56 at A17)

3

paying a fine and costs due and directed that he be released from custody upon the presentation the order. (*Id.* at A23) The order referenced K1 - 0709009149 : 001 Disord. Conduct. (*Id.*) On January 1, 2009, a lieutenant advised Johnson that the bail for the VOP charge had been removed. (D.I. 51 at 4, D.I. 56 at A10, A12) Johnson contacted his family, posted the two thousand dollars bond on January 2, 2009, and was released. (*Id.* at A10, A15, A24-25)

Warden Morgan contends he had no knowledge that the Central Offenders Records had, in error, placed a VOP charge in Johnson's offender status sheet. (D.I. 59 at Morgan aff.) In addition, he states that he was not aware of any aspect of Johnson's claims. (*Id.*) He had no knowledge of the grievance submitted by Johnson or the events of which Johnson complains that occurred between December 16, 2008 and January 2, 2009. (*Id.*) Johnson's grievance did not go past the informal resolution stage and was resolved upon Johnson's release; therefore, it was not forwarded to Warden Morgan for review. (*Id.*)

### III. LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] Fed. R. Civ. P. 56(a). The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the clams in question. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Material facts are those "that could affect the outcome" of the proceeding; "a

---

[3]Rule 56 was revised by amendment effective December 1, 2010. "The standard for granting summary judgment remains unchanged," and "[t]he amendments will not affect continuing development of the decisional law construing and applying these phrases." Fed. R. Civ. P. 56 advisory committee's note to 2010 Amendments.

4

dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–61 (3d Cir. 1989). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1).

When determining whether a genuine issue of material fact exists, the Court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *See Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *See Anderson*, 477 U.S. at 247-49; *Matsushita Elec. Indus. Co.*, 475 U.S. at 586–87 ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 322.

5

## IV. DISCUSSION

Warden Morgan moves for summary judgment on the grounds that: (1) there was no violation of Johnson's constitutional rights; (2) he is entitled to qualified immunity; (3) Johnson fails to state a claim pursuant to 42 U.S.C. § 1986; and (4) Johnson's claim of mental anguish lacks an arguable basis in fact and law.

### A. 42 U.S.C. § 1983

Warden Morgan argues that summary judgment is appropriate because there is no evidence of record that he caused a constitutional violation. He contends that Johnson was placed in detention pursuant to a facially valid warrant, and the continued detention was the result of an inadvertent clerical error that placed the VOP charge on Johnson's offender status sheet. Johnson responds that there remains a genuine issue of fact – whether Warden Morgan had an obligation and duty to act and assist him in removing the VOP charge from his record, with its one thousand dollar cash bond, and whether Warden Morgan neglected his duty.

#### 1. VOP Charge

When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *See West v. Atkins,* 487 U.S. 42, 48 (1988). Johnson does not suggest that his arrest was constitutionally deficient or that Warden Morgan was involved in his arrest. Johnson was aware that an arrest was imminent and he made arrangements for the payment of bail. It is clear from the pleadings that Johnson's claims are based solely upon Warden Morgan's action, or inaction, following his arrest and detention, after the issuance of lawful Commitment Orders. Johnson's claim is that Warden Morgan ignored his complaints and failed to immediately investigate and

6

remove the VOP charge that appeared in error on his offender status sheet that, in turn, would eliminate the one thousand dollar bail associated with the charge. Johnson contends that, as a result, he was wrongfully detained.

As the Supreme Court stated in *Baker v. McCollan*, 443 U.S. 137, 143-44 (1979),

> Absent an attack on the validity of the warrant under which he was arrested, respondent's complaint is simply that despite his protests of mistaken identity, he was detained [over the long weekend]. Whatever claims this situation might give rise to under state tort law, we think it gives rise to no claim under the United States Constitution.

*See also Mitchell v. Aluisi*, 872 F.2d 577, 579 (4th Cir. 1989) (fact that Mitchell alerted arresting officer that charges against him had been dropped was irrelevant, as police officers executing arrest warrant need not debate every claim of innocence); *Hargarten v. Dart*, 2009 WL 103153 (N.D. Ill. Jan. 15, 2009) (court's reliance on incorrect bond amount did not give rise to liability of sheriff or executive director, absent connection to official custom or policy of defendants). The *Baker* Court further stated that, "[g]iven the requirements that arrest be made only on probable cause and that one detained be accorded a speedy trial, we do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent." *Baker*, 443 U.S. at 145-46.

Just as an officer does not have a duty to independently investigate the claimed innocence of a person arrested on a bench warrant, it follows that Warden Morgan should not be held responsible for failing to personally investigate Johnson's claims that a VOP charge had been entered in error. Nonetheless, an investigation took place once Johnson submitted his grievance,

7

albeit not as quickly as Johnson wished, and Johnson was released once the State Court issued its Order of Release.

Finally, the record reflects that Johnson was held pursuant to lawful commitments, his niece held sufficient money for his cash bail, and it was Johnson who opted not to pay the bail for VOP charge because he did not want to pay "non-refundable" money. Johnson chose to remain at the HRYCI to "clear up" the matter rather than pay the bail for VOP charge and resolve the matter after he was released. Based upon the foregoing, it cannot be said that Warden Morgan violated Johnson's constitutional rights in the continued detention.

### 2. **Respondeat Superior/Personal Involvement**

In addition, it is evident that Johnson named Warden Morgan as a defendant based upon his supervisory position. It is well-established that a defendant in a civil rights action must have personal involvement in the alleged wrongs in order to be liable, and such a defendant cannot be held responsible for a constitutional violation in which he or she neither participated nor approved. *See Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). A § 1983 claim cannot be premised upon a theory of respondeat superior; instead, in order to establish liability for deprivation of a constitutional right, a party must show personal involvement by each defendant. *See Brito v. United States Dep't of Justice*, 392 F. App'x 11, 14 (3d Cir. Aug. 18, 2010) (not published) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 29 S.Ct. at 1948-49*)*; *Rode*, 845 F.2d at 1207).

Because vicarious liability is inapplicable to § 1983 suits, a plaintiff must show that each Government-official defendant, through the official's own individual actions, has violated the Constitution. *See Iqbal*, 129 S.Ct. at 1948. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct. *See Iqbal*, 129 S.Ct. at 1949. "Thus, when a plaintiff sues an official under § 1983 for conduct 'arising from his or her superintendent responsibilities,' the plaintiff must . . . prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well." *Dodds v. Richardson*, 614 F.3d 1185, 1198 (10th Cir. 2010), *cert. denied*, __U.S.__, 131 S.Ct. 2150 (2011) (quoting *Iqbal*, 129 S.Ct. at 1949). The factors necessary to establish a § 1983 violation will vary with the constitutional provision at issue. *See id.*

Under pre-*Iqbal* Third Circuit precedent, "[t]here are two theories of supervisory liability," one under which supervisors can be liable if they "established and maintained a policy, practice or custom which directly caused [the] constitutional harm," and another under which supervisors can be liable if they "participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations." *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010) (internal quotation marks omitted). Supervisory liability may attach if the plaintiff shows that the supervisor's actions were "the moving force" behind the harm suffered by the plaintiff. *See Sample v. Diecks*, 885 F.2d 1099, 1117-18 (3d Cir. 1989); *see also Iqbal*, 129 S.Ct. at 1949-54; *City of Canton v. Harris*, 489 U.S. 378 (1989); *Heggenmiller v. Edna Mahan Corr. Inst. for Women*, 128 F. App'x 240 (3d Cir. Apr. 11, 2005) (not published). "Particularly after *Iqbal*, the

9

connection between the supervisor's directions and the constitutional deprivation must be sufficient to demonstrate a plausible nexus or affirmative link between the [directions] and the specific deprivation of constitutional rights at issue." *Santiago*, 629 F.3d at 130 (internal quotation marks omitted).

The Third Circuit has recognized the potential effect that *Iqbal* might have in altering the standard for supervisory liability in a § 1983 suit but, to date, has declined to decide whether *Iqbal* requires narrowing the scope of the test. *See Santiago*, 629 F.3d at 130 n.8; *see also Argueta v. United States Immigration and Customs Enforcement*, 643 F.3d 60 (3d Cir. 2011) ("To date, we have refrained from answering the question of whether *Iqbal* eliminated – or at least narrowed the scope of – supervisory liability because it was ultimately unnecessary to do so in order to dispose of the appeal then before us."); *Bayer v. Monroe County Children and Youth Servs.*, 577 F.3d 186, 190 n.5 (3d Cir. 2009) (stating in light of *Iqbal*, it is uncertain whether proof of personal knowledge, with nothing more, provides sufficient basis to impose liability upon supervisory official). Hence, it appears that, under a supervisory theory of liability, and even in light of *Iqbal,* personal involvement by a defendant remains the touchstone for establishing liability for the violation of a plaintiff's constitutional right.[4] *Williams v. Lackawanna County Prison*, 2010 WL 1491132, at *5 (M.D. Pa. Apr. 13, 2010).

---

[4]"'Supervision' entails, among other things, training, defining expected performance by promulgating rules or otherwise, monitoring adherence to performance standards, and responding to unacceptable performance whether through individualized discipline or further rulemaking." *Sample*, 885 F.2d at 1116. "For the purpose of defining the standard for liability of a supervisor under § 1983, the characterization of a particular aspect of supervision is unimportant." *Id.* at 1116-17.

Turning to the instant case, there is a paucity of evidence with regard to Johnson's claim of Warden Morgan's personal involvement. Warden Morgan was not the individual responsible for preparing Johnson's offender status report that erroneously included the VOP charge. While Johnson indicates that he wrote to Warden Morgan, the record contains no letters directed to Warden Morgan and, according to Warden Morgan, he was unaware of Johnson's dilemma. Johnson asserts that Warden Morgan did not investigate his complaint yet, as discussed above, Johnson's complaint was investigated once he submitted a grievance on the issue. The investigation was conducted by other prison officials, not Warden Morgan.

With regard to Warden Morgan's supervisory position, Johnson argues that he is the highest and chief authority of the HRYCI and he had the authority to release him. He further argues that Warden Morgan's staff ignored his complaints. A reasonable jury could not find in favor of Johnson based upon supervisory liability because there is no evidence of record that: (1) identifies an existing custom and practice that created an unreasonable risk of harm to Johnson, (2) Warden Morgan was aware that this unreasonable risk existed; (3) Warden Morgan was indifferent to that risk, and (4) the failure to immediately investigate the VOP charge resulted from Warden Morgan's failure to employ that supervisory practice or procedure. *See e.g., Sample*, 885 F.2d at 1118. For the above reasons, the Court will grant Warden Morgan's Motion for Summary Judgment.

### B. 42 U.S.C. § 1986

Warden Morgan moves for summary judgment on the § 1986 claims on the grounds that Johnson has failed to state a claim. Johnson responds that Warden Morgan violated his rights under 42 U.S.C. § 1985 and § 1986. Johnson's claim pursuant to § 1986 fails as a matter of law.

11

A cognizable 42 U.S.C. § 1985 claim is a prerequisite to stating a claim under § 1986. *See Robison v. Canterbury Vill., Inc.*, 848 F.2d 424, 431 n.10 (3d Cir. 1988); *Brawer v. Horowitz*, 535 F.2d 830, 841 (3d Cir. 1976). Johnson refers to 42 U.S.C. § 1985 in his response and, presumably, relies upon § 1985(3), since § 1985(1) and (2) are not implicated in any way in his allegations. Section 1985(3) prohibits conspiracies to deprive a "person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the law." The Supreme Court has interpreted the language of § 1985(3) as "requiring that the conspirators' actions be motivated by an intent to deprive their victims of the equal protection of the laws." *Kush v. Rutledge*, 460 U.S. 719, 725 (1983). It is well-settled that "intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Id.* at 726.

Here, there is no evidence of record that Warden Morgan treated Johnson differently due to his race. Nor is there evidence of an agreement or understanding among Warden Morgan and others to violate Johnson's constitutional rights or to discriminate against him under § 1985. No reasonable jury could find that Warden Morgan violated Johnson's rights pursuant to 42 U.S.C. § 1985 and, therefore, Johnson cannot prevail on his theory pursuant to § 1986.

Accordingly, the Court will grant Warden Morgan's motion for summary judgment as to the claim raised pursuant to 42 U.S.C. § 1986 claim.

V.  **<u>CONCLUSION</u>**

For the above reasons, the Court will grant Warden Morgan's Motion for Summary Judgment.[5]  An appropriate Order follows.

---

[5] Because Johnson's constitutional rights were not violated, the Court sees no need to address the issues of qualified immunity and emotional distress.

13